674 A.2d 616

JAMES T. BRADY, PETITIONER–APPELLANT, v. DEPARTMENT
OF PERSONNEL, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 13, 1996—Decided April 19, 1996.

558

Before Judges LONG and BROCHIN.

Appellant, *James T. Brady,* argued the cause *pro se.*

*Elizabeth M. Laufer,* Deputy Attorney General, argued the cause for respondent (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Ms. Laufer,* on the letter brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

Appellant James T. Brady, a police sergeant in the Atlantic City Police Department, took a civil service competitive examination for the position of police captain. The written part of the examina-

tion, referred to as the "in-basket" portion, consisted of problems arising from factual situations typical of those likely to confront a police captain. The examination required the examinee to assume that all of the situations arose during a single tour of duty. The problems were presented in the form of background information and communications of the sort which a police captain could expect to find in his "in-basket." The answers were graded according to what they showed of the various qualities and capacities expected of a police captain. The Department of Personnel refers to these qualities and capacities which the examination was designed to reveal as "dimensions." Sergeant Brady passed the examination, but he was dissatisfied with the evaluations that his answers received for the qualities of analysis, judgment, delegation, leadership, community sensitivity, and management control. He therefore undertook to appeal his examination score pursuant to *N.J.S.A.* 11A:4–1(e) and *N.J.A.C.* 4A:4–6.4.

To enable him to pursue his appeal, Sergeant Brady needed access to the questions, answers, and grader's comments. In accordance with the Department's published "Examination Review Policy for the Police Promotional Assessment Process, Fall 1992," he was permitted to review his "own responses to the examination . . ., the examination instructions and the scores [he] achieved on each dimension for each examination exercise, along with a brief descriptive statement of [his] performance on each dimension." He was also given "a summary sheet which describes how [his] total score was computed" and a synopsis of the problems which appeared on the examination, but not the problems themselves. He was allotted one hour to review these materials. He took notes, as he was permitted to do, but he was not permitted to remove the synopsis of the questions, his answers, or the assessor's comments from the room where he examined them.

Sergeant Brady's first level appeal was to the Supervisor of the Selection Appeals Unit of the Department of Personnel. After completing the permitted review of the test materials, he wrote a letter stating his disagreements with the grader's scoring of his

answers to the examination. He referred to each "dimension" whose grading he disputed and explained why, in his opinion, his answer had exhibited the quality which the grader found lacking. His letter and his brief on appeal imply that he attempted to refute every adverse comment of the grader that had been communicated to him.

Sergeant Brady's letter is dated September 15, 1993. It was answered by a letter dated May 31, 1994 from the Supervisor of the Selection Appeals Unit. She introduced her letter by assuring Sergeant Brady:

> I understand that the issues you raise are important and may very well have a big impact on your future. Therefore, my staff and I have thoroughly reviewed your letter and also all our related material. Below, you will find the details concerning this review as well as my findings.

She explained that the grader's evaluation of his examination for each of the qualities for which a grade was given was based on an evaluation of the answer to every problem and that the graders "looked for a pattern of behavior across all items to evaluate each dimension. Therefore, an item by item rationale is not warranted." The Supervisor then gave examples for each of the "dimensions" which she said substantiated the original grader's evaluation that a particular quality was lacking to an extent that adversely affected the grade. Sergeant Brady claims that the instances cited by the Supervisor as examples of his inadequacies are different from those referred to in the materials which he was permitted to review. We are not in a position to determine the accuracy of this contention from the materials submitted to us.

The Supervisor's conclusion was:

> In reply to your appeal of the scoring of your in-basket examination, a review of your in-basket dimension scores revealed that in each case, significant opportunities to demonstrate behaviors associated with specific dimensions were missed. As stated previously, these possible courses of action were generated by a panel of subject matter experts consisting of senior command personnel from police departments. After reviewing your responses in light of the guidelines and parameters established, we conclude that your assigned scores are accurate.

The following advice communicated to Sergeant Brady in the Supervisor's letter is pertinent to one of the grounds of his appeal:

> Please be advised that in accordance with Department of Personnel Rules, specifically *N.J.A.C.* 4A:4-6.6(*o*), you may appeal this decision to the Merit System Board within twenty days of receipt of this letter. Please note that the Board will only consider the proofs, arguments and issues presented at the previous level of appeal. No new or additional proofs, arguments or issues will be considered at the next level of appeal. In your letter of appeal to the Director of Appellate Practices and Labor Relations, you may include exceptions to this decision.

Sergeant Brady appealed the decision to the Merit System Board. The document by which he took that appeal is not included in the record furnished to us. In any event, he apparently took the Supervisor's advice literally and did not submit any argument to the Merit System Board different from or in addition to what he had submitted to initiate his first level appeal.

The Merit System Board affirmed:

> A thorough review of the record indicates that the Selections Appeals Unit Supervisor addressed all arguments and contentions raised by the appellant on appeal. Appellant provides no basis for appeal of the decision of the Supervisor, Selection Appeals Unit. The present record fails to provide a basis to disturb that decision.

On his appeal to us, Sergeant Brady argues that the Department of Personnel failed to fully advise him of all the deficiencies which it found in his answers to his examination and therefore made it impossible for him to respond to the adverse findings. He also contends that he was unfairly misled by the Department's advice to him that he could not present any argument to the Merit System Board on his second administrative appeal which he had not presented in support of his first appeal.

In considering the merits of Sergeant Brady's appeal to our court, we start from the premise that he has a right to appeal the grading of his examination. This right is confirmed by statute. *N.J.S.A.* 11A:4-1(e). Furthermore, since the decision of the Merit System Board is the final decision of a State administrative agency, the right to appeal its decision is protected by our State Constitution. N.J. Const., art. VI, sec. 5, para. 4; *In re Senior Appeals Examiners*, 60 *N.J.* 356, 363, 290 *A.2d* 129 (1972); *see also R.* 2:2–3(a)(2).

■ Meaningful appellate review of an agency's decision and due process of law for the appellant require that the agency disclose the evidence which forms the basis for its decision both to the party aggrieved by its ruling and to the reviewing court. As our Supreme Court declared in *In re Department of Insurance's Order Nos. A89–119 and A90–125*, 129 *N.J.* 365, 609 *A.*2d 1236 (1992):

> One of the core values of judicial review of administrative action is the furtherance of accountability. Thus, an agency is never free to act on undisclosed evidence that parties have had no opportunity to rebut.
>
> [*Id.* at 383, 609 *A.*2d 1236 (citing *Brotherhood of R.R. Trainmen v. Palmer*, 47 *N.J.* 482, 487, 221 *A.*2d 721 (1966)) ].

*See also Limongelli v. State Bd. Of Dentistry*, 137 *N.J.* 317, 645 *A.*2d 677 (1993).

*In re Carter*, 177 *F.*2d 75 (D.C.Cir.), *cert. denied* 338 *U.S.* 900, 70 *S.Ct.* 250, 94 *L.Ed.* 554 (1949), and *In re Carter*, 192 *F.*2d 15 (D.C.Cir.), *cert. denied* 342 *U.S.* 862, 72 *S.Ct.* 89, 96 *L.Ed.* 648 (1951), illustrate that fundamental proposition. Under a statute local to the District of Columbia, a license issued by the district court was required by any person seeking to engage in the business of writing bonds in criminal cases. Carter's license as a bondsman was revoked on the basis of secret information which had been collected by the F.B.I., placed in a sealed envelope by the district court, and withheld even from counsel for the parties. 177 *F.*2d at 77, 192 *F.*2d at 15–16. The Court of Appeals reversed the revocation, holding that the license, once issued, could be revoked only in accordance with due process of law which required "a hearing and revelation of all data upon which a decision is to be based." 177 *F.*2d at 78. When the term of the license had expired, the district court refused to renew it, still relying on the F.B.I. files in the sealed envelope. The Court of Appeals reversed again, rejecting the district court's assumption that it could "deny the application without a hearing, without evidence, and without possibility of review to determine whether its discretion was abused," and it reiterated its prior statement of the necessity for

"revelation of all data upon which a decision is to be based." 192 *F.*2d at 16–17.

Similarly, in *Bratton v. Chandler*, 260 *U.S.* 110, 43 *S.Ct.* 43, 67 *L.Ed.* 157 (1922), the Supreme Court sustained the constitutionality of a state statute only by rejecting the district court's literal interpretation of the law. The district court read the statute to authorize a state commission to base its licensing decisions on information which it might "procure independently of the applicant, . . . and this without any provision for notice or opportunity to meet the evidence so procured, nor even to be advised of the nature or source of the evidence." *Id.* at 112, 43 *S.Ct.* at 43, 67 *L.Ed.* at 161. Despite the language of the statute supporting the district court's interpretation, the Supreme Court held that all of the evidence collected by the commission had to be given to the applicant and he had to be afforded an opportunity to meet all adverse evidence.

■ In the present case, not all of the evidence on which the Department of Personnel based its decision has been withheld from Sergeant Brady. He was given an hour to review a synopsis of the examination questions, his answers and some cryptic comments of the grader. From a practical standpoint, however, that was not much better than the agency's withholding all of the evidence on which its grading decision was based. The limited disclosure afforded him was not sufficient to satisfy the due process requirement that all of the evidence on which an agency bases its decision must be revealed to the appellant. Without custody of the questions and answers, he was not in a position to obtain the advice of an attorney or of an expert on the subject matter of the examination. Without that advice and some reasonably complete explanation of the basis for the grader's evaluation of his answers, he is not able to intelligently dispute or acquiesce in the grade he was awarded.

■ Furthermore, although our appellate duties do not include grading civil service examination questions, our review function does require us, after we have accorded the utmost deference to

the Department of Personnel and to its technical expertise, to judge whether there is a reasonable basis for its determinations. *See Zicherman v. Department of Civil Service*, 40 *N.J.* 347, 350–51, 192 *A.*2d 566 (1963); *Brotspies v. Department of Civil Service*, 66 *N.J.Super.* 492, 498, 169 *A.*2d 484 (App.Div.1961); *Artaserse v. Department of Civil Service*, 37 *N.J.Super.* 98, 105, 117 *A.*2d 22 (App.Div.1955). We cannot perform that review function without the questions, the answers, and some expert explanation to tell us in what respects the questions were well or poorly answered.

In *Artaserse, supra,* the Civil Service Commission provided copies of the disputed questions to the appellants' attorneys. These questions dealt with legal matters. The attorneys submitted them to another attorney whom they regarded as an expert on their subject matter and he prepared a memorandum expressing his opinion as to the correct answers. Having submitted this memorandum to the commission, the attorneys had a series of conferences with the Commission, and ultimately the Commission agreed to regrade the examinations, disregarding six of the nine disputed questions. In *Brotspies, supra,* this court entered an order directing that the appellants be given the opportunity to examine the questions. By consent, a single judge of this court conducted a hearing at which the appellants specified the questions to which they objected and stated the reasons why, in their opinions, their answers were correct. The judge was then provided with a copy of the questions, of the answers which the appellants contended were correct and of those which the Department of Civil Service had determined were correct. In *Zicherman, supra,* the Supreme Court, which certified the case on its own motion before argument in the Appellate Division, noted that this court had "directed the Department [of Civil Service] to make available to the appellant the examination questions and their answers on condition that they should not be publicized or used in any way except in connection with the appeal," and that "[t]hereafter the Department supplied the appellant with the examination questions and answers of [all] the four applicants...." *Zicherman, supra,* 40 *N.J.* at 350, 192 *A.*2d 566. The fact that in each of

these cases the questions, the answers and some explanation of the scoring was provided to the appellant and to the court, buttresses our conclusion that this information must also be provided to Sergeant Brady in the present case.[1]

We will not undertake to prescribe how or subject to what conditions the required information must be furnished to Sergeant Brady. We leave that in the first instance to the good faith determination of the Department of Personnel. We hold, however, that procedural fairness requires that a person who is entitled to appeal from the grade awarded him or her on a written civil service examination must be furnished with a copy of the questions and of his or her answers. Furthermore, the Department of Personnel must provide a sufficient explanation for its

---

[1] In *McGarrity v. Department of Civil Service*, 140 *N.J.Super.* 536, 357 A.2d 20 (App.Div.1975), *certif. denied* as to DiGiovanna, *granted* as to McGarrity and Fiore, and, as to them, summarily *rev'd*, 70 *N.J.* 153, 358 A.2d 199 (1976), there were two appeals from decisions of the Civil Service Commission which had affirmed the results of promotional examinations. McGarrity and Fiore appealed from the grading of an oral examination; DiGiovanna, from the allegedly discriminatory manner in which an oral examination was conducted. All of the parties asked this court to remand their cases for plenary hearings before the Civil Service Commission, and we granted remands in both cases. The Supreme Court, with no explanation whatsoever and no reference to any other opinion, denied certification of the Commission's appeal in DiGiovanna's case, granted certification of the appeals in the McGarrity and Fiore cases and, in the latter two cases, summarily reversed the decision of the Appellate Division.

McGarrity and Fiore had received an administrative review of their appeals by the Civil Service Commission and had been given the opportunity to inspect the record presented to the Commission and to supplement it with factual material or written argument. The reported opinion of this court does not show what materials were included in the record that the appellants were permitted to inspect; for example, whether it included audiotapes of the oral examinations.

The Supreme Court was clearly of the view that the applicable statutes and regulations did not authorize and the State and Federal Constitutions did not require the plenary hearing which this court ordered. *Cf. Honachefsky v. New Jersey Civil Service Comm'n*, 174 *N.J.Super.* 539, 417 A.2d 67 (App.Div.1980) (holding that no hearing was required in a case contesting the conduct of a civil service examination because no statute provided for it and there was no fact question which constitutionally required it).

grading decisions to enable a reviewing court, which is obligated to give due deference to the authority, responsibility and expertise of the agency, to determine whether the agency's decisions have a reasonable basis.

This conclusion makes it unnecessary for us to consider Sergeant Brady's second point, that he was misled by the Department's advice that no argument would be considered during his appeal to the Merit System Board which was not presented in connection with his first level appeal.

The decision appealed from is reversed and this matter is remanded to the Merit System Board for further proceedings not inconsistent with this opinion.